Jasen, J.
On May 11, 1963, the petitioner Danny Nagle, then age 16, drove off in his mother’s car along with one Patrick Flannery, age 15, and one other juvenile, from Syracuse to Bridgeport, New York, so that Flannery could buy a car. On the return trip, Nagle attempted to tow this car back to Syracuse but, after the rope had broken several times, Flannery decided to drive his car under its own power. At this point Nagle affixed his license plates to Flannery’s car. Shortly thereafter, the Flannery car, which had been following Nagle, stalled by the side of the road. He stopped his automobile and walked back to determine the difficulty. When he got to the Flannery car, it had been restarted, so Nagle began to run back to his vehicle. After a few steps, he was struck from the rear by the Flannery car and injured.
Nagle served upon the respondent MVAIC a notice of intention to make a claim for the injuries sustained as a result of said accident and a demand for arbitration, pursuant to the terms of the New York Automobile Accident Indemnification Endorsement contained in a policy of automobile insurance issued to a member of his household. MVAIC moved to vacate the notice of arbitration on the grounds that Nagle “ was a knowing participant in a scheme to transport an unregistered motor vehicle bearing improper license plates while the same was being operated by an under-age, unlicensed and uninsured driver and therefore that he was not an ‘ innocent victim ’ within the contemplation of the Legislature of those persons to be protected by the MVAIC Laws, Rules and Regulations.” Special Term agreed with MVAIC and the Appellate Division unanimously affirmed.
The basic question before this court concerns the right of a claimant to have the issue of whether he is an “ innocent victim ” within the meaning of subdivision 2 of section 600 of the Insurance Law determined by an arbitrator. The resolution of this issue turns upon the meaning of the words ‘ ‘ innocent victim ’ ’ as used in the statute.
Subdivision 2 of section 600 of the Insurance Law reads in pertinent part: 1 ‘ The legislature finds and declares that the motor vehicle financial security act as enacted in nineteen hundred fifty-six, which requires the owner of a motor vehicle to furnish proof of financial security as a condition to registration, fails to accomplish its full purpose of securing to innocent vie *169 tims of motor vehicle accidents recompense for the injury and financial loss inflicted upon them, in that the act makes no provision for the payment of loss on account of injury to or death of persons who, through no fault of their own, were involved in motor vehicle accidents * * * The legislature determines that it is a matter of grave concern that such innocent victims are not recompensed for the injury and financial loss inflicted upon them and that the public interest can best be served by closing such gaps in the motor vehicle financial security act through the incorporation and operation of the motor vehicle accident indemnification corporation.” (Emphasis supplied.)
MVAIC construes the above language to mean that the Legislature intended “ to provide protection for people who [were injured] through no fault of their own, in the sense that they were total strangers to the accident in question, rather than participants therein ”. In reaching this conclusion, it relies upon Matter of MV AIC (Levy) (17 A D 2d 965 [2d Dept., 1962]) in which the Appellate Division held that the construction of the term “ innocent victim ” presented an issue of law to be determined by a court and is not within the competence of an arbitrator.' That case involved a claimant who was a passenger in a stolen car. The Appellate Division took the position that if the claimant had known that the car had been stolen when she entered it or if she had remained as a passenger after acquiring such knowledge — provided she had a reasonable opportunity to disembark therefrom—she would be barred from recovering against MVAIC.
The thrust of the decision below is that a claimant against MVAIC must sustain a greater burden than the common-law requirements of proving fault in the other party and freedom from contributory negligence in himself. The court appears to have engrafted an additional requirement — that the claimant not be a wrongdoer — even if his misfeasance is not the proximate cause of his injury. Thus, as one court has put it, the statute does not cover ‘ ‘ persons who, when injured, were wrongdoers— persons engaged in criminal conduct or motivated by evil intent or committing an act not acceptable under our standards of morality.” (Matter of Hilton [MV AIC], 53 Misc 2d 823, 825 [Sup. Ct., 1967].)
*170 We find this position untenable. The entire legislative history of article 17-A of the Insurance Law clearly shows that it was intended to supplement the Motor Vehicle Financial Security Act (Vehicle and Traffic Law, art. 6, formerly art. 6-A, as added by L. 1956, ch. 655). It was noted in a legislative memorandum that the Legislature had thus “ plugged these ‘ loopholes ’ ” in the compulsory automobile insurance law. (New York State Legis. Ann., 1958, p. 244.)
In addition, the declaration of purpose contained in the Motor Vehicle Financial Security Act (L. 1956, ch. 655) set forth that ‘1 The legislature determines that it is a matter of grave concern that motorists shall be financially able to respond in damages for their negligent acts, so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them.” (Emphasis supplied.) Although the language of the declarations for both acts is remarkably similar, no one has suggested that an insured driver may successfully resist liability to an injured party on the basis that the plaintiff was a “ wrongdoer,” where such wrongdoing was not a cause of the injury.
On the contrary, it has been recognized that the purpose of this statute was to provide compensation through the MVAIC to the extent that claims would be recognized and claimants compensated as if the owner or driver of the vehicle causing the injury were insured. (McCarthy v. MVAIC, 16 A D 2d 35 [4th Dept., 1962], affd. 12 N Y 2d 922; Morisi v. MVAIC, 19 A D 2d 727 [2d Dept., 1963]; Matter of Beagle [MVAIC], 26 A D 2d 313 [4th Dept., 1966].)
In sum, we are convinced that the Legislature intended the term “ innocent ” to be -synonymous with the phrase “ without fault ” insofar as it connotes a freedom from negligence. Once it is determined that the term ‘ ‘ innocent victim ’ ’ is intertwined with concepts of negligence, it follows that such a finding should properly be made by an arbitrator and not by a court as a condition precedent to arbitration. The court below itself recognized that if it was ‘ ‘ concerned with the contributory negligence of the claimant in determining the claimant’s right of recovery against the respondent, this issue would not be a proper one upon which to base this application.” (Matter of Rosenbaum [American Sur. Co. of N. Y.], 11 N Y 2d 310; see, also, Matter of *171 Short [MVAIC], 42 Misc 2d 682 [Sup. Ct., 1964].) This is precisely the kind of determination which should be made exclusively by the arbitrator in this case. The matter to be resolved is not whether Nagle was a wrongdoer in any criminal or moral sense, but whether his acts were a proximate cause of his injuries.
The order appealed from should be reversed and the matter remanded to Supreme Court, Onondaga County, for further proceedings in accordance with this opinion.
Chief Judge Fuld and Judges Burke, Soileppi, Bergan, Keating and Breitel concur
Order reversed, with costs, and matter remitted to Supreme Court, Onondaga County, for further proceedings in accordance with the opinion herein.